UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATHANIEL ADKINS,

    Petitioner,

v.                                            Case No. 8:20-cv-2412-CEH-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

**ORDER**

    Nathaniel Adkins, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 10.) Respondent filed a response opposing the petition. (Doc. 13.) Adkins filed a reply. (Doc. 14.) Upon consideration, the petition is **DENIED**.

**I.    Procedural History**

    A state-court jury convicted Adkins of burglary of an occupied dwelling, battery on a law enforcement officer, and petit theft. (Doc. 13-2, Ex. 5.) After finding that Adkins qualified as a prisoner releasee reoffender and a habitual felony offender, the state trial court sentenced him to concurrent terms of fifteen years and one day in prison for burglary, five years and one day for battery, and time served for petit theft. (*Id.*, Ex. 13, at 4.) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 17.) Next, Adkins unsuccessfully sought postconviction relief

1

under Florida Rule of Criminal Procedure 3.850. (*Id.*, Exs. 18, 19.) Adkins did not timely appeal the denial of his Rule 3.850 motion. Instead, after the expiration of the appeal deadline, he filed a petition for belated appeal, which the state appellate court denied. (*Id.*, Exs. 21, 22.) This federal habeas petition followed.[1] (Doc. 10.)

## II.   Facts; Trial Testimony

On the morning of October 3, 2017, Adkins was drinking a beer outside Git-N-Go, a convenience store in Tampa, Florida. (Doc. 13-2, Ex. 3, at 149-50.) Adkins frequented the store, and he sometimes performed chores for "Junior," the owner. (*Id.* at 149.) This morning, several "teenagers" approached Adkins outside the store. (*Id.* at 150.) They had "jumped" him before, and Junior had attempted to "run them off." (*Id.* at 150-51.) The teenagers told Adkins that they "ought to just whoop [his] ass right now." (*Id.* at 151.) Seeking to avoid a confrontation, Adkins "jogged" to a nearby house rented by Dianet Garcia Padron. (*Id.* at 115-16, 151, 153.) The teenagers did not follow Adkins there. (*Id.* at 144.)

Garcia Padron saw Adkins walking toward her porch. (*Id.* at 116.) She opened the front door and asked him what he was doing. (*Id.*) Adkins did not respond, so Garcia Padron went back inside and closed the door. (*Id.* at 116-17, 152-53.) Adkins sat outside the house, finished his beer (the fourth of the day), and "put the can in the garbage can." (*Id.* at 153, 156.) Approximately ten minutes after the encounter with

---

[1] The docket in this action contains three copies of Adkins's petition. (Docs. 1, 6, 10.) The only difference between them is that the first two copies are unsigned (Docs. 1, 6), while the third copy is signed. (Doc. 10.)

Garcia Padron, Adkins opened the "screen door" to a garage attached to the house and looked inside. (*Id.* at 117, 153-54.) Garcia Padron heard Adkins "sorting things out" in the garage and called her husband, who dialed 911. (*Id.* at 115-16.) Meanwhile, Adkins spotted a bicycle in the garage and decided to take it. (*Id.* at 153-54.)

As Adkins was walking down the driveway with the bicycle, Deputy Marlon Garcia arrived on the scene. (*Id.* at 132.) Deputy Garcia arrested Adkins and placed him in a patrol vehicle. (*Id.* at 133.) As the two were driving to the Orient Road Jail, Adkins became "very verbally aggressive" and spat on Deputy Garcia's right arm. (*Id.* at 134.) Deputy Garcia pulled over and "place[d] a spit mask over" Adkins's face. (*Id.*)

Adkins testified at trial. He claimed that he stole the bicycle because he was "in fear of [his] life" and it would "get [him] out of that neighborhood faster than on feet." (*Id.* at 143, 154.) As for the incident in the police cruiser, Adkins testified that he spat on Deputy Garcia because he was "angry" about his encounter with the teenagers. (*Id.* at 158-59.) He also testified, however, that he was off his seizure medication, and that when he was in the police cruiser, he spat on Deputy Garcia as he was trying to explain that he was "about to have a seizure."[2] (*Id.* at 147-48.) On cross-examination, Adkins was asked when he "start[ed] feeling bad health wise" during the incident. (*Id.* at 156.) He explained that he was "[s]ort of" "okay" before he entered the police cruiser, but that when he was placed in the car he began "doing a lot of burping on the beer that

---

[2] Adkins did not testify that he in fact had a seizure on the day of the incident.

3

[he] had[] just drunk." (*Id.* at 156-57.) Adkins admitted that burping was not a symptom of an oncoming seizure. (*Id.* at 157.)

## III. Standards of Review

### A. AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

4

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Adkins's convictions and sentences without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**B.      Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v.*

5

*Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### C. Ineffective Assistance of Counsel

Adkins alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Adkins must show that counsel's alleged error prejudiced the defense, because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Adkins must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## IV. Discussion

### A. Procedural Default

Respondent correctly contends that all of Adkins's claims are procedurally defaulted because he did not properly exhaust them in state court. (Doc. 13 at 2-5.) In his federal habeas petition, Adkins raises three grounds for relief, each based on

ineffective assistance of trial counsel. (Doc. 10 at 3-6.) Adkins brought these claims in his Rule 3.850 motion, and the state postconviction court summarily rejected them. (Doc. 13-2, Exs. 18, 19.) But Adkins did not timely appeal the denial of his Rule 3.850 motion. Instead, two months after the appeal deadline passed, Adkins filed a petition for belated appeal, which the state appellate court denied. (*Id.*, Exs. 21, 22.)

Adkins's failure to timely appeal the denial of his Rule 3.850 motion caused a procedural default of his claims. *See Boerckel*, 526 U.S. at 847 ("[Petitioner]'s failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial."); *Roberts v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-434-TJC-JRK, 2021 WL 808852, at *7 (M.D. Fla. Mar. 3, 2021) (holding that claims were "unexhausted and procedurally defaulted" because petitioner "did not timely appeal the denial of his Rule 3.850 motion" and the state appellate court "found [he] was not entitled to a belated appeal"). Thus, his claims are barred from federal review "unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith*, 256 F.3d at 1138.

Adkins does not dispute that he failed to properly exhaust his claims. Instead, he seeks to establish cause for the default based on his alleged inability to file a timely notice of appeal. (Doc. 14 at 1-3.) The state postconviction court denied the Rule 3.850 motion on April 8, 2020, and informed Adkins that he had "thirty (30) days from the date of this Final Order within which to appeal." (Doc. 13-2, Ex. 19, at 9.) Adkins

8

states that, during this thirty-day window, he was "unable to properly access the law library" or confer with the inmate law clerk due to a COVID-related lockdown. (Doc. 14 at 2-3.) As a result, Adkins was allegedly unable "to timely file a notice of appeal." (*Id.* at 3.)

These allegations are insufficient to establish that "some external impediment prevent[ed]" Adkins from timely appealing the denial of his Rule 3.850 motion. *Alderman v. Zant*, 22 F.3d 1541, 1551 (11th Cir. 1994) (emphasis omitted). Although inability to access a law library can in principle supply cause for a default, the petitioner must "specif[y] what materials he needed but could not get because of the lack of access to [the] law library." *Duncan v. Jones*, No. CA 13-0603-WS-C, 2014 WL 2155366, at *12 (S.D. Ala. May 22, 2014). Adkins fails to explain why he needed to visit the law library to prepare his notice of appeal—a "simple task" in Florida state court. *Daniels v. Sec'y, Dep't of Corr.*, No. 8:19-cv-406-WFJ-JSS, 2021 WL 2228393, at *2 n.2 (M.D. Fla. May 19, 2021); *see also Jordan v. State*, 549 So. 2d 805, 806 (Fla. 1st DCA 1989) ("We do not believe that access to a law library is necessary to prepare and transmit a simple notice of appeal."). Furthermore, Adkins does not allege that the lockdown prevented him from mailing documents to the state court. Nor does he claim that he did not receive the order denying his Rule 3.850 motion until after the appeal deadline. In short, Adkins has not shown that lack of access to the law library impeded his ability to submit a timely notice of appeal. *See Wallace v. Sec'y, Fla. Dep't of Corr.*, No. 15-13486-D, 2016 WL 11848476, at *2 (11th Cir. Sept. 12, 2016) ("[Petitioner] did not allege that he was unaware of the state court's denial of his Rule

9

3.850 motion until the time for appealing it had expired. Therefore, he could have appealed the denial of his Rule 3.850 motion even if he did not have access to the prison law library and the library was small and understaffed.").

As for Adkins's allegation that he could not confer with the inmate law clerk, the "inability to secure prison law clerk assistance do[es] not constitute cause" for a default. *Francis v. Sec'y, Dep't of Corr.*, No. 8:15-cv-2205-CEH-AAS, 2018 WL 3093481, at *4 (M.D. Fla. June 22, 2018) (collecting cases); *see also Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir. 1990) (holding that "poor advice by inmate law clerks" and lack of "legal assistance in preparing [] collateral petition" do not establish cause); *Daniels*, 2021 WL 2228393, at *2 (finding that petitioner's "assertion that he had no 'legal assistance' to help him file a notice of appeal [was] insufficient to demonstrate cause for the default").

In sum, Adkins fails to establish cause for the default of his claims. Nor does he show that the "fundamental miscarriage of justice" exception applies. As a result, his claims are procedurally barred from federal review.

    **B.**    **Merits**

Even if Adkins had not defaulted his claims, he would not be entitled to relief because they fail on the merits.

    **1.**    **Ground One**

Adkins contends that his trial counsel was ineffective for failing to conduct any cross-examination of Deputy Garcia, the arresting officer. (Doc. 10 at 3-4.) Counsel cross-examined the State's other witnesses but did not cross-examine Deputy Garcia.

10

(Doc. 13-2, Ex. 3, at 3.) According to Adkins, counsel should have asked Deputy Garcia about Adkins's "mental health," "medical condition," and "demeanor" "during the time of the incident." (Doc. 10 at 4.) More specifically, Adkins faults counsel for failing to "question[] [Deputy Garcia] concerning signs of agitation, paranoia[,] and mental unstableness." (*Id.*) Adkins claims that such questions "would have brought out that at the time of the incident [he] was unstable mentally and in fear of his life." (*Id.*) This testimony allegedly would have bolstered the necessity defense Adkins offered at trial—that is, his claim that he stole the bicycle because he was "in fear of his life." (*Id.*)

The state postconviction court rejected this claim, reasoning that "the record refute[d] the allegations that [Adkins] was prejudiced by counsel's failure to cross-examine Deputy Garcia." (Doc. 13-2, Ex. 19, at 4.) The court explained:

> [T]he record clearly refutes Defendant's allegations that he was mentally unstable, in fear of his life, or suffering a medical condition at the time of the incident and refutes that cross-examining Deputy Garcia would have established these allegations. Testimony from Deputy Garcia, Ms. Garcia Padron, and Defendant reflects Defendant: (1) sat in Ms. Garcia Padron's driveway for approximately ten minutes while he finished his beer; (2) did not act fearful or ask Ms. Garcia Padron for help when she asked him if everything was ok; (3) took time to throw the can in the garbage; (4) looked in Ms. Garcia Padron's garage, noticed the bike, entered the garage without permission, and took the bike; (5) walked the bike down the driveway, (6) was calm until he was placed under arrest and on his way to jail, (7) was suffering no symptoms associated with a medical episode or oncoming medical episode, and (8) based on Defendant's own testimony he spit because he was angry. Consequently, the Court finds Defendant cannot establish any resulting prejudice as a result of counsel's failure to cross-examine Deputy Garcia.

(*Id.* at 6-7.)

The state postconviction court reasonably rejected Adkins's ineffective-assistance claim for lack of prejudice. To show prejudice under *Strickland*, Adkins must "establish a reasonable probability that, but for counsel's [failure to cross-examine Deputy Garcia], the outcome at trial would have been different." *Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1261 (11th Cir. 2014); *see also Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("Absent a showing of a single specific instance where cross-examination arguably could have affected the outcome of either the guilt or sentencing phase of the trial, the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*."). Adkins failed to meet his burden.

First, there is no evidence that cross-examination of Deputy Garcia would have established that Adkins "was unstable mentally," "in fear of his life," or suffering from a medical condition. (Doc. 10 at 4.) Deputy Garcia stated on direct examination that Adkins became "very verbally aggressive" inside the police cruiser. (Doc. 13-2, Ex. 3, at 134.) But there is no basis to conclude that Deputy Garcia observed signs of mental instability in Adkins. Likewise, Adkins presents no evidence that Deputy Garcia was aware that he was "in fear of his life" during the incident. (Doc. 10 at 4.) Nor is there any indication that Deputy Garcia's testimony on cross-examination would have shown that Adkins was suffering from a medical condition. To the contrary, Adkins stated at trial that (1) the only symptom of "bad health" he experienced in the police cruiser was that he was burping from the beer he had drunk, and (2) burping did not indicate an oncoming seizure. (Doc. 13-2, Ex. 3, at 156-57.) Adkins's speculation that Deputy Garcia would have provided favorable testimony on cross-examination is

insufficient to establish prejudice. *See McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (noting that "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice" (collecting cases)).

Second, even if Deputy Garcia had testified as Adkins proposes, there is no "reasonable probability that . . . the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. During closing argument, Adkins advanced a necessity defense to the burglary and petit-theft charges, arguing that he stole the bicycle from the garage because he was "worried [] he was about to get beat up" and needed to "get out of the neighborhood." (Doc. 13-2, Ex. 3, at 182-86.) The necessity defense includes the following elements[3]:

> (1) the defendant reasonably believed that his action was necessary to avoid an imminent threat of death or serious bodily injury to himself or others; (2) the defendant did not intentionally or recklessly place himself in a situation in which it would be probable that he would be forced to choose the criminal conduct; (3) there existed no other adequate means to avoid the threatened harm except the criminal conduct; (4) the harm sought to be avoided was more egregious than the criminal conduct perpetrated to avoid it; and (5) the defendant ceased the criminal conduct as soon as the necessity or apparent necessity for it ended.

*Butler v. State*, 14 So. 3d 269, 270-71 (Fla. 1st DCA 2009).

As just noted, Adkins claims that he was "in fear of his life" because teenagers had threatened to beat him up outside the Git-N-Go. (Doc. 10 at 4.) But it is undisputed that, for approximately ten minutes after his encounter with Garcia

---

[3] The trial court in this case instructed the jury on the necessity defense. (Doc. 13-2, Ex. 3, at 205-06.)

Padron, he sat outside her house, finished his beer, and "put the can in the garbage can." (Doc. 13-2, Ex. 3, at 153, 156.) It was only after Adkins threw away the beer can that he entered the garage and stole the bicycle. (*Id.* at 153-54.) Moreover, Adkins did not ask Garcia Padron for assistance when she spoke to him on the porch. In these circumstances, there is no basis to conclude that Adkins "reasonably believed" that stealing a bicycle was "necessary to avoid an *imminent* threat of death or serious bodily injury to himself." *Butler*, 14 So. 3d at 270 (emphasis added); *see also Mickell v. State*, 41 So. 3d 960, 962 (Fla. 4th DCA 2010) (noting that the "threatened harm must be real, imminent, and impending"). Thus, even if Deputy Garcia had testified that Adkins showed signs of "agitation, paranoia[,] and mental unstableness," there is no reasonable probability that the jury would have accepted his necessity defense. (Doc. 10 at 4.)

Because the state postconviction court reasonably found no prejudice from the failure to cross-examine Deputy Garcia, Ground One lacks merit.

## 2. Ground Two

Adkins contends that his trial counsel was ineffective for failing to call "Junior" at trial. (*Id.* at 4-5.) As explained above, Junior worked at the Git-N-Go and occasionally had Adkins perform chores for him around the store. (Doc. 13-2, Ex. 3, at 149.) At trial, Adkins testified that the teenagers who approached him on October 3, 2017, had previously "jumped" him outside the store, and that Junior had attempted to "run them off" on those prior occasions. (*Id.* at 150-51.) Adkins argues that, had counsel called Junior to testify, he could have confirmed that Adkins "was beat by

14

young teenagers before," and that Junior had "had to stop these guys from jumping" Adkins "a few times." (Doc. 10 at 5.) According to Adkins, this testimony would have bolstered his defense that he stole the bicycle because "he was in fear of his life." (*Id.* at 4-5.)

The state postconviction court rejected this claim on the ground that Adkins did not establish "prejudice" from the failure to call Junior at trial. (Doc. 13-2, Ex. 19, at 7.) The court explained:

> Defendant testified that after he left the retail area, he hid at the residence next to the store[] for approximately 10 minutes while he finished his beer before attempting to leave on the bicycle. Thus, taking as true Defendant's allegations that Junior could have testified about a prior incident, the Court finds Defendant's own testimony that he waited for 10 minutes while he finished his beer refutes his contention that he attempted to take the bike because he was running in fear of his life. As a result, the Court finds Junior's testimony about a prior incident would not have resulted in a different outcome at trial. Accordingly, relief is not warranted on [this claim].

(*Id.* at 7-8 (record citation omitted).)

The rejection of this claim was reasonable. To show prejudice, Adkins must "establish a reasonable probability that, but for counsel's [failure to present testimony from Junior], the outcome at trial would have been different." *Reed*, 767 F.3d at 1261. Adkins contends that Junior's proposed testimony was "crucial" because it bolstered his necessity defense. (Doc. 10 at 5.) But, as the state postconviction court correctly explained, the necessity defense was "refute[d]" by Adkins's testimony that, before he stole the bicycle, "he waited for 10 minutes while he finished his beer" outside Garcia Padron's house. (Doc. 13-2, Ex. 3, at 8.) As a result, even if Junior had corroborated

15

Adkins's testimony about the prior encounters with the teenagers, there is no "reasonable probability" that the jury would have acquitted Adkins based on the necessity defense. *Reed*, 767 F.3d at 1261. Thus, Ground Two lacks merit.

### 3. Ground Three

Adkins contends that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of "simple burglary." (Doc. 10 at 5.) Adkins was charged with burglary of an occupied dwelling, a second-degree felony. (Doc. 13-2, Ex. 2, at 1; *see also* Fla. Stat. § 810.02(1)(b)(3)(a).) The trial court instructed the jury on the elements of that offense. (Doc. 13-2, Ex. 3, at 200-02.) The court also informed the jury that, if it did not find the charge to be "proved beyond a reasonable doubt," it must consider whether Adkins was guilty of the lesser-included offense of trespass. (*Id.* at 203.) The court did not, however, instruct the jury that it could find Adkins guilty of the lesser-included offense of simple burglary, a third-degree felony that occurs if the offender (1) enters an unoccupied "structure" or "conveyance" rather than a "dwelling," and (2) intends "to commit an offense therein."[4] Fla. Stat. § 810.02(1)(b)(4). Likewise, the verdict form required the jury to decide whether Adkins committed burglary of an occupied dwelling or trespass; it did not include an option

---

[4] The trial court instructed the jury that "[d]welling" "means a building of any kind, whether such building is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the enclosed space of ground and outbuildings immediately surrounding it." (Doc. 13-2, Ex. 3, at 201.) The court also noted that, "[f]or the purpose of burglary, a dwelling includes an attached porch or attached garage." (*Id.*)

16

for simple burglary. (Doc. 13-2, Ex. 5.) As noted above, the jury ultimately found Adkins guilty of burglary of an occupied dwelling. (*Id.*)

Adkins contends that, had the trial court instructed the jury on the lesser-included offense of simple burglary, there is a "reasonable probability" that it "would have returned a guilty verdict only as to th[at] lesser offense." (Doc. 10 at 6.) Thus, he claims that counsel "was ineffective for failing to request the omitted lesser[-]included offense." (*Id.*) The state postconviction court summarily rejected this claim:

> The Court finds that "any finding of prejudice resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise: that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." *Sanders v. State,* 946 So. 2d 953, 959 (Fla. 2006). Therefore, this Court finds, as the Florida Supreme Court previously held, "the possibility of a jury pardon cannot form the basis for a finding of prejudice under *Strickland*." *Id.* at 960. Consequently, the Court finds that Defendant failed to prove prejudice as a result of counsel's failure to request an instruction on a lesser-included offense. As such, no relief is warranted upon [this ground].

(Doc. 13-2, Ex. 19, at 8-9.)

The state postconviction court reasonably rejected this claim for lack of prejudice. Florida law requires a jury to "render a true verdict according to the law and the evidence." *Sanders*, 946 So. 2d at 958. Thus, a jury may convict of a lesser-included offense "only if it decide[s] that the main accusation has not been proved beyond a reasonable doubt." *Id.* Indeed, the jury in this case was instructed that if it "return[ed] a verdict of guilty, it should be [for] the highest offense which has been proven beyond a reasonable doubt." (Doc. 13-2, Ex. 3, at 211.) The Court is required

to assume that the jury followed this instruction. *See Strickland*, 466 U.S. at 694 ("[A] court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law."). As just noted, the jury found Adkins guilty of burglary of an occupied dwelling. (Doc. 13-2, Ex. 5.) Accordingly, "even if the lesser-offense instruction[] had been given, the jury would not have been permitted to convict [Adkins] of the lesser-included offense[] [of simple burglary] because it had concluded that the evidence established that he was guilty of the greater offense[]" of burglary of an occupied dwelling. *Crapser v. Sec'y, Dep't of Corr.*, 855 F. App'x 626, 628 (11th Cir. 2021).

At bottom, Adkins's "assertion of prejudice depends . . . on the possibility of a jury pardon—that is, that the jury would have disregarded its oath and violated its instructions by acquitting him of the greater offense and convicting him of a lesser one even though the evidence supported both crimes." *Id.* "The possibility of a jury pardon, however, cannot establish prejudice under *Strickland*." *Thornton v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-762-MMH-PDB, 2021 WL 2073685, at *9 (M.D. Fla. May 24, 2021); *see also Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 889 (11th Cir. 2012) ("The jury in [petitioner's] trial concluded that the evidence against him supported his conviction for the greater offenses on which it was instructed; therefore, even if the lesser-offense instructions had been given, the jury would not have been permitted to convict [petitioner] of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses."). Accordingly, this Court "cannot say that the [state postconviction] court unreasonably applied *Strickland*

in concluding that [Adkins's] counsel's failure to request the lesser included offense instructions did not prejudice his defense."[5] *Santiago*, 472 F. App'x at 889.

It is therefore **ORDERED** that Adkins's petition (Doc. 10) is **DENIED**. The **CLERK** is directed to enter judgment against Adkins and to **CLOSE** this case.[6]

<u>**Certificate of Appealability**</u>
<u>**and Leave to Appeal *In Forma Pauperis* Denied**</u>

It is further **ORDERED** that Adkins is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a certificate of appealability must first issue. *Id*. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id*. at § 2253(c)(2). To obtain a certificate of appealability, Adkins must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Adkins has not made the requisite showing.

---

[5] Adkins also appears to contend that counsel should have asked for an instruction on the lesser-included offense of attempted burglary. (Doc. 10 at 6.) For the reasons set forth above, that claim also fails for lack of prejudice.

[6] Adkins seeks an evidentiary hearing on his claims. The Court determines that an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

Case 8:20-cv-02412-CEH-TGW   Document 16   Filed 10/20/23   Page 20 of 20 PageID 667


Finally, because Adkins is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, on October 20, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of record
Unrepresented parties